POTTER HANDY, LLP
Mark Potter, Esq. SBN 166317
Ray Ballister, Esq. SBN 111282
Christina Sosa, Esq. SBN 280048
Dennis Price, Esq. SBN 279082
9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385
Fax: (888) 422-5191
mark@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WICKHAM and BETHANY WICKHAM<br><br>        Plaintiffs,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING LLC; and DOES 1 TO 10<br><br>        Defendants. | Case No.<br><br>Complaint for Damages and Injunctive Relief Pursuant to:<br><br>1) The Fair Debt Collections Practices Act, 15 U.S.C.A. §1692<br>2) The Rosenthal Fair Debt Collection Practices Act, Civ. Code § 1788 et seq.<br>3) The Fair Credit Reporting Act, 15 USC §1681 et seq.<br>4) California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §1785 et seq.<br>5) **CLASS ACTION** The Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.<br><br>Demand For Jury |

Plaintiffs Robert Wickham and Bethany Wickham, (hereinafter "Plaintiffs"), hereby complain and allege as follows:

## I. INTRODUCTION

1.     This is an action brought individually by two consumers for Defendant MIDLAND CREDIT MANAGEMENT, INC. (hereinafter "MCM") and MIDLAND FUNDING LLC's (hereinafter "Midland Funding," and collectively referred to as

Complaint

"Defendants") violation of the Fair Debt Collections Practices Act, 15 U.S.C.A. §1692 ("FDCPA"); the Rosenthal Fair Debt Collection Practices Act, Civ. Code § 1788 et seq. ("RFDCPA"); the Fair Credit Reporting Act, 15 USC §1681 et seq. ("FCRA"); and the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §1785 et seq. ("CCRAA"), which occurred during Defendants' attempts to collect on two separate debts.

2.     This action is also brought by Plaintiff Robert and Bethany Wickham on behalf of themselves and all those similarly situated for Defendants' violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA").

3.     Defendants violated the FDCPA, which prohibits: (1) a debt collector from communicating with a consumer for purposes of collecting any debt at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer, except with the prior consent of the consumer, or the express permission of a court of competent jurisdiction; (2) a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt such as causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number; and (3) the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, including the false representation about the character or legal status of the debt.

4.     Defendants have repeatedly called and communicated with Plaintiffs for the collection of debts at their place of employment despite knowing that the debts have been settled and/or are expired and should not have accrued in the first place.

5.     Plaintiffs seek monetary and injunctive relief based on Defendants' violations of the FDCPA.

6.     Defendants violated the RFDCPA, which prohibits a debt collector from communicating, by telephone or in person, with the debtor with such frequency as

1    to be unreasonable and to constitute an harassment to the debtor under the
2    circumstances such as causing a telephone to ring repeatedly or continuously to
3    annoy the person called.

4    7.    Defendants have repeatedly called and communicated with Plaintiffs for the
5    collection of debts at their place of employment despite knowing that the debts
6    have been settled and/or are expired and should not have accrued in the first place.

7    8.    Plaintiffs seek monetary and injunctive relief based on Defendants'
8    violations of the RFDCPA.

9    9.    Defendants violated the FCRA, which requires furnishers of information,
10   upon notice of a dispute with the accuracy of information provided to a credit
11   reporting agency, to complete an investigation and correct any inaccurate
12   information within 30 days.

13   10.    Defendants repeatedly misreported to consumer credit reporting agencies
14   the alleged debts of Plaintiffs despite being informed by consumer credit reporting
15   agencies that the debts were invalid and/or have been subject of a settlement.

16   11.    Plaintiffs seek monetary relief based on Defendants' violations of the FCRA.

17   12.    Defendants violated the CCRAA, which forbids furnishing information on a
18   specific transaction or experience to any consumer credit reporting agency if the
19   person knows or should know the information is incomplete or inaccurate.

20   13.    Defendants repeatedly misreported to consumer credit reporting agencies
21   the alleged debts of Plaintiffs despite being informed by consumer credit reporting
22   agencies that the debts were invalid and/or have been subject of a settlement.

23   14.    Plaintiffs seek monetary relief based on Defendants' violations of the
24   CCRAA.

25   15.    This is a class action brought on behalf of persons in the United States that
26   have received calls to their cellular telephones from Defendants without their
27   express permission. This is an action for damages brought by individual consumers
28   on behalf of themselves and everyone else similarly situated for Defendants'

Complaint

violations of the TCPA, which prohibits calls made by an automatic dialer to a consumer's cellular telephone without prior express permission.

16.     Defendants engaged in a pattern of deliberate harassment, contacting Plaintiffs on their cellular telephone despite the fact that they never provided their cellular telephone number to Defendants and asked Defendants to stop calling the cellular numbers.

17.     The phone calls described above total at least 35 calls.

18.     Each of the phone calls described above was placed to Plaintiffs cellular telephone, without their express permission, by means of an automatic telephone dialing system.

19.     Plaintiffs seek monetary and injunctive relief based on Defendants' violations of the TCPA.

20.     As a result of Defendants' conduct, Plaintiffs have suffered emotional distress, including but not limited to embarrassment for receiving debt collection calls at work and being turned down by at least three lenders which prevented them from securing financing for the purchase of a home. Plaintiffs seek monetary relief based on Defendants' conduct.

## II. PARTIES

21.     Plaintiffs Robert Wickham and Bethany Wickham are natural persons who resided in Wildomar, California at all relevant times.

22.     Bethany Wickham is the primary account holder of cellular telephone number 951-250-8869, hereinafter "the 8869 number," and is the person who is charged for each call within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii).

23.     The telephone number 951-315-7208, hereinafter "the 7208 number," is assigned to a cellular phone in the possession of Robert Wickham. The 7208 number is provided to Mr. Wickham by his employer, who is the primary account holder.

Complaint

24.    Plaintiffs allege on information and belief that Defendant MIDLAND CREDIT MANAGEMENT, INC. is a Kansas corporation located at 3111 Camino Del Rio North, Suite 1300, San Diego, California. It is a subsidiary of the Encore Capital Group, a leader in the consumer debt buying and recovery industry. It purport to help consumers resolve past due financial obligations. At all times relevant to this Complaint, MIDLAND CREDIT MANAGEMENT, INC., hereinafter "MCM," has transacted business in the State of California and County of Riverside.

25.    Plaintiffs allege on information and belief that Defendant MIDLAND FUNDING LLC is a Delaware corporation located at 3111 Camino Del Rio North, Suite 1300, San Diego, California. It is an affiliate of co-Defendant MCM. It is one of the nation's biggest buyers of debt, and it purports to help consumers resolve past due financial obligations. At all times relevant to this Complaint, MIDLAND FUNDING LLC has transacted business in the State of California and County of Riverside.

### III. JURISDICTION & VENUE

26.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) and (a)(4) for violations of the Fair Credit Reporting Act, 15 U.S.C.A. §1681, et seq., the FAIR DEBT COLLECTIONS PRACTICES ACT, 15 U.S.C.A. §1692, and the Telephone Consumer Protection Act 47 U.S.C. § 227, et seq.

27.    Pursuant to pendant jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Consumer Credit Reporting Agencies Act, Cal. Civ. Code §1785 et seq. and the Rosenthal Fair Debt Collection Practices Act, Civ. Code § 1788 et seq.

28.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that a substantial part of the events or omissions giving rise to the claim occurred in this district and that Plaintiffs' cause of action arose in this district.

### IV. FAIR DEBT COLLECTIONS PRACTICES ACT, 15 U.S.C.A. §1692

29.     Congress enacted the Fair Debt Collections Practices Act, "FDCPA," in response to abundant evidence of debt collector abuse, deception, and unfair practices when attempting to collect debts.

30.     The FDCPA seeks to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

31.     The FDCPA is a strict liability statute, subsection (a), and applies to the conduct of debt collectors, as defined at 15 U.S.C.A. §1692a(6).

32.     Under the FDCPA, 15 U.S.C.A. §1692c(a)(1), a debt collector is prohibited from communicating with a consumer for purposes of collecting any debt at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer, except with the prior consent of the consumer, or the express permission of a court of competent jurisdiction.

33.     Under the FDCPA, 15 U.S.C.A. §1692d(5), a debt collector is prohibited from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt such as causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

34.     Under the FDCPA, 15 U.S.C.A. §1692e(2), a debt collector is also prohibited from using any false, deceptive, or misleading representations or means in

Complaint

connection with the collection of any debt, including the false representation about the character or legal status of the debt.

## V. ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CIV. CODE § 1788 ET SEQ.

35.    The Rosenthal Fair Debt Collection Practices Act, "RFDCPA," was enacted in 1977 to prohibit debt collectors from engaging in unfair or deceptive acts or practices in collecting consumer debts.

36.    Under the RFDCPA, a debt collector is any person who, in the ordinary course of business, regularly, on behalf of itself or others, engages in debt collection.

37.    The RFDCPA, under California Civil Code §1788.11(d) and (e), bars any debt collector from collecting any consumer debt by causing a telephone to ring repeatedly or continuously to annoy the person called or communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances. Additionally, the RFDCPA, under Civil Code §1788.17, makes any violation of the federal Fair Debt Collection Practices Act a violation of the state statute.

## VI. FAIR CREDIT REPORTING ACT, 15 U.S.C.A. §1681, ET SEQ.

38.    Congress enacted the Fair Credit Reporting Act, "FCRA," in 1970 to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

39.    The FCRA seeks to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.

40.    In 1996, Congress amended 15 U.S.C. §1681s-2(b) to provide a private remedy against furnishers for reporting false or inaccurate credit information. Prior to this amendment, a consumer damaged by furnisher misconduct could only seek recourse under the FCRA with the Federal Trade Commission.

41.    Under 15 U.S.C. §1681s-2(b), after notification of a dispute regarding the accuracy of the information provided to a credit reporting agency, the furnisher of information must complete all investigations, reviews, and reports, and either record the current status or delete the information before 30 days has expired.

## VII. CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §1785 ET SEQ.

42.    The California Consumer Credit Reporting Agencies Act ("CCRAA") was enacted in 1975 with a purpose and goal virtually identical to that of the FCRA. Similar to the development of FCRA, the California legislature added a private cause of action against furnishers of credit information when it enacted Cal. Civ. Code § 1785.25(a) in 1993.

43.    While the FCRA appears to pre-empt much of the CCRAA, Cal. Civ. Code § 1785.25(a) was specifically saved in the 1996 amendment of 15 U.S.C. §1681t(b)(1)(F).

44.    Under Cal. Civ. Code § 1785.25(a), a person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate.

## VIII. TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. SECTION 227 ET. SEQ.

45.    In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. section 227, in response to a growing number of consumer complaints regarding telemarketing practices.

Complaint

46.     The TCPA regulates, among other things, the use of automated telephone equipment, also known as "autodialers." The language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the dialed party.

47.     These telephone calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls. Further, such calls can be costly and inconvenient.

48.     On or about January 4, 2008, the Federal Communication Commission ("FCC") released a Declaratory Ruling wherein it confirmed that autodialed or prerecorded message telephone calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the telephone calls are made with the "prior express consent" of the called party. Express consent is granted only if the wireless number was provided by the consumer to the creditor, and that the number was provided during the transaction that resulted in the debt owed.

### IX. FACTS

49.     Plaintiffs Robert Wickham and Bethany Wickham are natural persons and consumers within the meaning of 15 U.S.C.A. § 1692a(3).

50.     Defendants are debt collectors within the meaning of 15 U.S.C.A. § 1692a(6).

51.     Sometime prior to 2010, Plaintiff Robert Wickham was extended a line of care credit by GE Money Bank and/or Care Credit Cosmetic in the form of a Care Credit Card, account number ending in 5570, hereinafter "Care Credit Card."

52.     Mr. Wickham used his Care Credit Card primarily for personal, family, and household purchases.

53.     Plaintiffs allege on information and belief that sometime on or about September 29, 2011, GE Money Bank and/or Care Credit Cosmetic sold, assigned and/or transferred the Care Credit Card debt to Asset Acceptance LLC.

Complaint

54.     On or about July 12, 2012, Asset Acceptance LLC filed Case Number TEC1203845 with the Superior Court of California, Riverside, Southwest Justice Center, against Plaintiff Robert Wickham for the collection of the Care Credit Card debt.

55.     On or about December 18, 2012, Judgment of Default was entered against Plaintiff Robert Wickham in Case Number TEC1203845.

56.     On or about May 31, 2013, a payment agreement was executed between Plaintiff Robert Wickham and Thomas Gustin of Fulton Friedman & Gullace LLP, the counsel of Asset Acceptance LLC. Asset Acceptance LLC agreed not to enforce the judgment in light of the agreement.

57.     Per the May 31, 2013 agreement, Mr. Wickham paid $3,000 to Fulton Friedman & Gullace LLP on or before May 31, 2013.

58.     Per the May 31, 2013 agreement, Mr. Wickham paid $760 to Fulton Friedman & Gullace LLP on or before June 7, 2013.

59.     Per the May 31, 2013 agreement, Mr. Wickham paid approximately $1,415 to Fulton Friedman & Gullace LLP on or before July 31, 2013.

60.     Per the May 31, 2013 agreement, these three payments completed Mr. Wickham's obligation to the Care Credit Card debt. After these payments, no further debt was owed on this account.

61.     Plaintiffs allege on information and belief that sometime on or about March 19, 2014, Asset Acceptance LLC sold, assigned and/or transferred the Care Credit Card debt to Defendants.

62.     Shortly thereafter, Defendants began calling the 8869 number and the 7208 number in an attempt to collect the Care Credit Card debt that was settled in 2013.

63.     On or about May 22, 2007, Plaintiff Robert Wickham was extended a line of credit by CitiFinancial in the form of a credit card, account number ending in 2616, hereinafter "CitiFinancial Card."

Complaint

64.     Plaintiff Robert Wickham used his CitiFinancial Card primarily for personal, family, and household purchases.

65.     In approximately March 2008 Mr. Wickham used his CitiFinancial Card to purchase an air conditioning unit with a 90-day return policy to be used for his residence at 331 Aurora Drive in Perris, California.

66.     Shortly thereafter, Plaintiffs decided to move from their home. They immediately attempted to contact the seller to return the air conditioning unit, well within the 90 day return window.

67.     Despite their repeated phone calls, the company that sold the air conditioning unit to Plaintiffs failed to return their calls.

68.     Plaintiffs allege on information and belief that the air conditioner cost was the sole source of the debt on the CitiFinancial Card.

69.     On or about May 31, 2009, the CitiFinancial Card debt was charged off as an unpaid delinquent.

70.     Plaintiffs allege on information and belief that on or about January 25, 2012, Citifinancial sold, assigned and/or transferred the CitiFinancial Card debt to Defendants.

71.     Shortly thereafter, Defendants began calling the 8869 number and the 7208 number in an attempt to collect the CitiFinancial Card debt.

72.     Telephone number 951-250-8869 is assigned to a cellular phone owned by Plaintiff Bethany Wickham.

73.     The debts that were subject of Defendants' phone calls to Plaintiff Bethany Wickham originated from the Care Credit Card and/or the CitiFinancial Card.

74.     Telephone number 951-315-7208 is assigned to a cellular phone used by Robert Wickham and owned by his employer.

75.     The debts that were subject of Defendants' phone calls to Plaintiff Robert Wickham originated from the Care Credit Card and/or the CitiFinancial Card.

Complaint

76.    Outgoing phone numbers 877-237-0512 and 877-411-5551 are phone numbers assigned to Defendants.

77.    Defendants contacted Plaintiff Bethany Wickham at the 8869 number at least 35 times between approximately November 15, 2010 and approximately November 15, 2014, with most of the calls occurring after March 1, 2014.

78.    Plaintiff Bethany Wickham did not provide the 8869 number to Defendants at any time.

79.    Plaintiff Bethany Wickham did not give her consent to Defendants to call the 8869 number at any time.

80.    Plaintiff Bethany Wickham explicitly instructed Defendants not to contact her at the 8869 number.

81.    Defendants contacted Plaintiff Robert Wickham at the 7208 number at least 5 times between approximately November 15, 2010 and approximately November 15, 2014, with most of the calls occurring after March 1, 2014.

82.    Plaintiff Robert Wickham did not provide the 7208 number to Defendants at any time.

83.    Plaintiff Robert Wickham did not give his consent to Defendants to call the 7208 number at any time.

84.    Plaintiff Robert Wickham explicitly instructed Defendants not to contact him at the 7208 number.

85.    Defendants placed these calls with the intent to communicate with Plaintiffs regarding a debt.

86.    Each time Defendants contacted the 8869 and 7208 numbers it was in an attempt to collect a debt.

87.    Defendants called the 8869 and 7208 numbers utilizing an Automatic Telephone Dialing System ("ATDS").

88.    The telephone calls placed by Defendants to the 8869 and 7208 numbers via the ATDS used "an artificial or prerecorded voice" as described in 47 U.S.C. section 227(b)(1)(A).

89.    Defendants' calling system, when paired with specialized software, has the capacity to store or produce numbers and dial those numbers at random, in a sequential order, or from a database of numbers.

90.    Defendants continued to place such telephone calls despite being told repeatedly by Mr. and Mrs. Wickham to not call the 8869 and 7208 numbers.

91.    Defendants called the 8869 and 7208 numbers using an auto dial device without Mr. and Mrs. Wickham's express permission.

92.    Defendants' collection agents continued to badger Mr. and Mrs. Wickham with repeated calls the 8869 and 7208 numbers with the intent to harass Plaintiffs.

93.    Defendants placed telephone calls to Plaintiff Bethany Wickham's phone number with the knowledge that using an automatic telephone dialing system would be in violation of the TCPA.

94.    In some instances, Defendants called Plaintiff Bethany Wickham while she is at her place of employment which would require her to explain to her superiors and clients why she needs to take the calls.

95.    In all instances, Defendants called Plaintiff Robert Wickham on a cellular phone dedicated to work calls and paid for by his employer.

96.    In at least one instance, Defendants called Plaintiff Bethany Wickham after 9 p.m..

97.    On information and believe Plaintiffs allege that Defendants are misreporting the Care Credit Card debt as presently owing. This debt was satisfied on or about June 2013.

98.    Plaintiffs first notified TransUnion, Equifax, and Experian, collectively "the Consumer Reporting Agencies" or "CRA," of the Care Credit Card reporting error on or about April 26, 2013.

Complaint

99.     On information and belief, Plaintiffs allege Defendants were notified by the CRAs shortly after April 26, 2013 that the Care Credit Card debt had been satisfied.

100.    Plaintiffs notified the CRAs about the Care Credit Card reporting error again on or about May 24, 2013, June 21, 2013, July 19, 2013, August 16, 2013, September 13, 2013, and October 10, 2013.

101.    On information and belief, Plaintiffs allege Defendants were notified by the CRAs six more times between May 24, 2013 and October 31, 2013 that the Care Credit Card debt had been satisfied.

102.    Defendants failed to complete the investigation of the dispute within 30 days of learning of the dispute.

103.    To date, Plaintiffs' credit reports remain incorrect and Defendants continue to report the Care Credit Card as having an outstanding debt owed.

104.    The misreporting of this debt has adversely affected the credit worthiness of Plaintiffs.

105.    Due to Defendants' misreporting of the debts to consumer credit reporting agencies, the Plaintiffs' credit has dropped and has affected their attempts at buying a house.

106.    Plaintiffs have attempted to secure financing to purchase a home from W.J. Bradly Mortgage Capital, First Mortgage Corporation, and American Financial Network, but have been rejected due to Defendants' failure to correctly report the status of the Care Credit Card.

107.    If not for Defendants' furnishment of inaccurate information, and their failure to quickly correct their error, Plaintiffs would have been able to secure a loan to purchase a home.

108.    Defendants' misreporting of Plaintiffs' alleged debts to the consumer reporting agencies is still hindering Plaintiffs from securing a home loan.

109.   As a direct result of Defendants' ongoing campaign of harassment, Plaintiffs have incurred actual damages consisting of mental and emotional distress, nervousness, embarrassment, anxiety, humiliation, trouble sleeping, pain and suffering, failure to obtain financing to purchase a home and other injuries

## X. CLASS ALLEGATIONS

110.   Plaintiffs re-allege and incorporate by reference every allegation contained in all paragraphs above, as if set forth at this point.

111.   These actions may be properly maintained as a class action pursuant to 47 USC § 227, and *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012); *Kaufman v. ACS Systems, Inc.*, 110 Cal. App. 4th 886, 923 (2003), and *McDonald v. Bonded Collectors, LLC.*, 233 F.R.D. 576, 577 (S.D. Cal. 2005).

112.   Plaintiffs bring this Complaint on behalf of all persons in the United States who have received debt collection calls in violation of the TCPA from Defendants on their cell phones via auto dialing devices without express permission over the past 4 years.  Plaintiffs are informed and believe that the class consists of thousands of persons.  Specifically excluded from the class are any entities in which any Defendants have a controlling interest; any of Defendants' parent companies, subsidiaries, or affiliates; and any of Defendants' officers and directors, members of their immediate families, their heirs, and their successors and assigns.

113.   The members of the class are so numerous that separate joinder of each member is impractical. Appropriate discovery can determine the exact number of Class members.  The disposition of class members' claims in a class action format will provide substantial benefits to the parties and the Court.

114.   The claims of the representative Plaintiffs raise questions of law and fact that are common to questions of law and fact raised by the claims of each member of the Class.

Complaint

115.   The claims of the representative Plaintiffs are typical of the claims of each member of the Class. Plaintiffs have the same interest in this matter as all other members of the Class.

116.   The prosecution of separate claims by each individual member of the Class would create a risk of inconsistent or varying adjudications.

117.   The questions of law or fact common to the claims of the representative Plaintiffs and the claims of each member of the Class predominate over any questions of law or fact affecting individual members of the Class. Class representation is superior to other available methods for fair and efficient adjudication of this controversy.

118.   Questions of law and/or fact that are common to the claim include but are not limited to:

    (A)   Whether, within the four years prior to filing of this Complaint, Defendants intentionally or negligently placed any phone calls to any Class member using any automated telephone dialing system to any telephone number assigned to a cellular telephone service without express permission to do so.

    (B)   Whether Plaintiffs and the Class members are damaged thereby and the extent of the damages for such violation.

    (C) Whether Defendants should be enjoined from engaging such conduct in the future.

119.   As persons who received at least one unsolicited telephone call in which the caller used an automated dialing system on their cell phone without prior express consent, Plaintiffs are asserting a claim that is typical of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interests antagonistic to any member of the Class.

120.   Plaintiffs and the members of the Class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct. Absent a class action,

Complaint

the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

121.   A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal and California law. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

122.   Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## XI. CAUSES OF ACTION

### FIRST COUNT

### VIOLATION OF THE FAIR DEBT COLLECTIONS
### PRACTICES ACT, 15 U.S.C.A. §1692

(On behalf of Plaintiffs and against all Defendants)

123.   Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

124.   Defendants' violations of the FDCPA include, but are not limited to, the following:

a.   Defendants violated 15 U.S.C.A. §1692c(a)(1), by communicating with Plaintiff Bethany Wickham for purposes of collecting a debt at her place

of employment, which is a time and place known or should be known to Defendants to be unusual and inconvenient to Plaintiff Bethany Wickham;

b.     Defendants violated 15 U.S.C.A. §1692d(5), by causing Plaintiffs' telephones to ring and engaging each Plaintiff in telephone conversation repeatedly or continuously for the collection of a debt with intent to annoy, abuse, or harass her;

c.     Defendants violated 15 U.S.C.A. §1692e(2) by falsely representing the character or legal status of the debts knowing that they were already settled and/or expired and should have not accrued in the first place.

125.   As a result of Defendants' violations of the FDCPA, Plaintiffs are entitled to an award of actual damages, statutory damages, costs, injunctive relief, and attorney's fees.

## SECOND COUNT

## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTIONS PRACTICES ACT, CIV. CODE § 1788 ET SEQ.

(On behalf of Plaintiffs and against all Defendants)

126.   Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

127.   Defendants' violations of the RFDCPA include, but are not limited to, California Civil Code §1788.11(d) and (e) by causing Plaintiffs' telephones to ring repeatedly or continuously to annoy and communicating, by telephone or in person, with Plaintiffs with such frequency as to be unreasonable and to constitute harassment under the circumstances, in connection with the collection of a consumer debt.

128.   As a result of Defendants' violations of the RFDCPA, Plaintiffs are entitled to an award of actual damages, statutory damages, costs, injunctive relief, and attorney's fees.

///

Complaint

**THIRD COUNT**

**WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT,**

**15 U.S.C.A. §1681, ET SEQ.**

(On behalf of Plaintiffs and against all Defendants)

129.   Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

130.   Defendants' violations of the FCRA include, but are not limited to, the following:

    a.   Defendants violated 15 U.S.C. §1681s-2(b) by failing to complete all investigations, reviews, and reports, and either record the current status or delete the information within 30 days after notification of a dispute regarding the accuracy of the information provided to a credit reporting agency.

131.   As a result of Defendants' violations of the FCRA, Plaintiffs are entitled to actual damages, punitive damages, costs, injunctive relief, and attorney's fees.

**FOURTH COUNT**

**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT,**

**15 U.S.C.A. §1681, ET SEQ.**

(On behalf of Plaintiffs and against all Defendants)

132.   Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

133.   Defendants' violations of the FCRA include, but are not limited to, the following:

    a.   Defendants violated 15 U.S.C. §1681s-2(b) by failing to complete all investigations, reviews, and reports, and either record the current status or delete the information within 30 days after notification of a dispute regarding the accuracy of the information provided to a credit reporting agency.

134.   As a result of Defendants' violations of the FCRA, Plaintiffs are entitled to actual damages, costs, injunctive relief, and attorney's fees.

**FIFTH COUNT**

**WILLFUL VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §1785 ET SEQ.**

(On behalf of Plaintiffs and against all Defendants)

135.   Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

136.   Defendants' violations of the CCRAA include, but are not limited to, the following:

    a.   Defendants violated Civil Code § 1785.25(a) by furnishing information on a specific transaction or experience to one or more consumer credit reporting agencies when they knew or should have known the information was incomplete or inaccurate.

137.   As a result of Defendants' violations of the CCRAA, Plaintiffs are entitled to an award of actual damages, punitive damages, costs, injunctive relief, and attorney's fees.

**SIXTH COUNT**

**NEGLIGENT VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §1785 ET SEQ.**

(On behalf of Plaintiffs and against all Defendants)

138.   Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

139.   Defendants' violations of the CCRAA include, but are not limited to, the following:

    a.   Defendants violated Civil Code § 1785.25(a) by furnishing information on a specific transaction or experience to one or more consumer credit

Complaint

reporting agencies when they knew or should have known the information was incomplete or inaccurate.

140. As a result of Defendant's violations of the CCRAA, Plaintiffs are entitled to an award of actual damages, costs, injunctive relief, and attorney's fees.

**SEVENTH COUNT**

**NEGLIGENT VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. SECTION 227, ET. SEQ.**

(On behalf of Plaintiffs and all persons similarly situated and against all Defendants)

141. Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

142. The Telephone Consumer Protection Act (TCPA) provides, in pertinent part: "It shall be unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— [...] (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; [...]" 47 U.S.C. § 227(b)(1).

143. A person may bring an action based on a violation of the TCPA to "recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). If a court finds that the defendant willfully and knowingly violated the TCPA, it may increase the amount of the award to a maximum of three times this amount, or $1,500.00 per violation. 47 U.S.C. § 227(b)(3).

144. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. section 227 et. seq. As a result of Defendants'

Complaint

negligent violations of 47 U.S.C. section 227 et. seq., Plaintiffs and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of statute, pursuant to 47 U.S.C. section 227(b)(3)(B).

145.   Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

146.   Plaintiffs and Class members are entitled to an award of attorneys' fees and costs.

**EIGHTH COUNT**

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT,**

**47 U.S.C. SECTION 227, ET. SEQ.**

(On behalf of Plaintiffs and all persons similarly situated and against all Defendants)

147.   Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

148.   The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. section 227 et. seq.

149.   Each of these violations was a willful and knowing violation of the law and makes Defendants liable for treble damages for each such violation in the amount of $1,500.00 per call.

150.   Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

151.   Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

///

///

///

Complaint

# XI. PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that judgment be entered against Defendants for the following:

1.  Actual and statutory damages and reasonable attorney's fees and costs pursuant to 15 U.S.C.A. § 1692k.

2.  Actual damages according to proof, statutory damages under Civil Code §1788.30(b), and reasonable attorney's fees under Civil Code §1788.30(c).

3.  Actual and punitive damages and reasonable attorney's fees and costs pursuant to 15 U.S.C.A. § 1681n and 1681o.

4.  Actual and punitive damages, and attorney's fees and costs pursuant to Civil Code § 1785.31.

5.  Non-economic, general, special, and punitive damages, including emotional distress, according to proof.

6.  Damages and statutory penalties for willful and knowing violations of the Telephone Consumer Protection Act in an amount of $1,500.00 per violation pursuant to 47 U.S.C. § 227(b)(3)(C) for Plaintiffs and Class members. In the alternative, and assuming the intentionality is not proved, the Plaintiffs and Class members seek $500.00 per violation pursuant to 47 U.S.C. § 227(b)(3)(B) as a result of Defendants' negligent violations of 47 U.S.C. § 227(b)(1).

7.  Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future for Plaintiffs and Class members.

8.  Any other relief the Court may deem just and proper.

Dated: March 5, 2015                    POTTER HANDY, LLP

                                        By: _____
                                        Christina Sosa, Esq.
                                        Attorneys for Plaintiffs

DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury for all claims for which a jury is permitted.


Dated: March 5, 2015                                        POTTER HANDY, LLP


By: _____
Christina Sosa, Esq.
Attorneys for Plaintiffs

24